**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ST. PAUL FIRE AND MARINE INSURANCE COMPANY,

Plaintiff, Case No.: ____________________

v.

BIG BROTHERS BIG SISTERS OF AMERICA CORPORATION,

Defendant.
_________________________________________/

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, St. Paul Fire and Marine Insurance Company ("St. Paul"), sues Defendant, Big Brothers Big Sisters of America Corporation ("BBBSA"), and alleges:

**NATURE OF THE ACTION**

1. This is an action for declaratory relief under 28 U.S.C. §§ 2201–2202 and Rule 57 of the Federal Rules of Civil Procedure. St. Paul seeks a declaration of the limits of insurance that remain available to BBBSA to resolve a pending lawsuit styled *Richard R. v. Doe 1, et al.*, Superior Court of California, County of San Francisco, Case No. CGC-22-603294 (the "Richard R. Action").

2. The Richard R. Action is the second of two lawsuits brought by brothers who allege they were sexually abused by the same volunteer mentor, during the same years, in the same household, through the same local affiliate's mentoring program. St. Paul previously funded settlement of the first lawsuit, brought by the younger brother (the "D.R. Action").

3. The parties dispute two questions: (a) whether the brothers' claims arise from one "occurrence" such that the limit under the 1982 Umbrella Policy (as defined below) has been

exhausted, and (b) whether the "each person limit" under the PLP Policies (as defined below) is the most St. Paul will pay for all claims resulting from injury to Richard R., or whether the "each person limit" applies separately to each policy year in which the alleged abuse occurred.

4. St. Paul seeks declarations that (a) the claims asserted in the D.R. Action and the Richard R. Action arise out of a single occurrence, such that the 1982 Umbrella Policy's limit has been exhausted; and (b) the most St. Paul is obligated to pay under the PLP Policies for all claims resulting from injury to Richard R. is a single each person limit.

**PARTIES**

5. St. Paul is a corporation organized under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut. St. Paul is therefore a citizen of Connecticut.

6. BBBSA is a nonprofit corporation organized under the laws of the District of Columbia with its principal place of business at 2502 N. Rocky Point Drive, Suite 550, Tampa, Florida 33607. BBBSA is therefore a citizen of the District of Columbia and Florida.

7. BBBSA is the named insured, under the name "Big Brothers/Big Sisters of America," on the St. Paul policies described below.

**JURISDICTION AND VENUE**

8. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1). The parties are citizens of different States, and the amount in controversy exceeds $75,000, exclusive of interest and costs. BBBSA contends that $3,000,000 in umbrella limits and $3,000,000 in primary limits remain available for the Richard R. Action, whereas St. Paul contends that only $1,000,000 in primary limits are available. In addition, BBBSA has demanded that St. Paul fund a settlement demand from Richard R. more than $75,000 in excess of the remaining $1,000,000 in available insurance.

9. This Court has authority to declare the rights and obligations of the parties under 28 U.S.C. §§ 2201 and 2202. An actual, present, and justiciable controversy exists between the parties regarding the limits available under the St. Paul policies, as further alleged below.

10. This Court has personal jurisdiction over BBBSA because BBBSA maintains its principal place of business in Tampa, Florida, and is at home in Florida.

11. Venue is proper in this District and Division under 28 U.S.C. § 1391(b)(1) because BBBSA resides in this District, and under Local Rule 1.04 because BBBSA's principal place of business is in Hillsborough County. Additionally, St. Paul directed its coverage correspondence regarding the Richard R. Action to BBBSA at its Tampa headquarters.

12. All conditions precedent to this action have occurred, been performed, or been waived.

## GENERAL ALLEGATIONS

### A. The Insurance Policies

13. St. Paul issued Policy No. 0564JJ2376 to "Big Brothers/Big Sisters of America," 117 S. 17th Street, Philadelphia, Pennsylvania 19103, for the policy period November 24, 1982 to November 24, 1983 (the "1982 PLP Policy"). The 1982 PLP Policy was issued and countersigned through a Pennsylvania agent, Warren & Welsh Company of King of Prussia, Pennsylvania, and contains Pennsylvania-required endorsements and notices. A true and correct copy is attached as Exhibit A.

14. St. Paul issued a Renewal Certificate under the same policy number, 0564JJ2376, for the period November 24, 1983 to November 24, 1984. The Renewal Certificate states that the policy "is extended in its present form" except for listed changes. The only listed change is the deletion of Pennsylvania endorsement 40528 (3-82). The Renewal Certificate is included in Exhibit A.

15. BBBSA contends that St. Paul also issued Policy No. 564JH3650 for the period November 24, 1981 to November 24, 1982 (the "Alleged 1981 Policy"). St. Paul has not located a copy of the Alleged 1981 Policy in its records. Based on secondary evidence, and subject to a full reservation of rights as to its existence, issuance, terms, and completeness, St. Paul has treated the Alleged 1981 Policy as containing the same professional liability coverage form and limits as the 1982 PLP Policy. The 1982 PLP Policy's Introduction page states that it "replaces your former policy" and "automatically ends all coverage you had under that policy." The 1982 PLP Policy, its renewal, and the Alleged 1981 Policy are referred to together as the "PLP Policies."

16. The PLP Policies include Professional Liability Protection coverage form 43001 (Ed. 3-80). Its Coverage Summary identifies the profession as "Counseling" and the protected organization as "Big Brothers/Big Sisters of America." It provides limits of coverage of $1,000,000 "Each Person Limit" and $3,000,000 "Total Limit."

17. The "Limits Of Coverage" section of form 43001 provides:

> Two limits apply to the amount we'll pay for professional claims. These limits are shown in the Coverage Summary. The limits apply separately to each covered person and organization.
>
> Each person limit. This is the most we'll pay for all claims resulting from the injury or death of any one person.
>
> Total limit. This is the most we'll pay for all injuries that take place in a policy year. By policy year we mean each consecutive annual period of the policy. If no total limit is shown, the total limit is 3 times the each person limit.

18. The "each person limit" is not tied to a policy year. It caps "all claims resulting from the injury … of any one person." By contrast, the "total limit" is expressly tied to "all injuries that take place in a policy year," and the form defines "policy year" as "each consecutive annual period of the policy." The form thus contemplates that one policy may span more than one consecutive annual period, and it resets only the total limit for each such period.

19. Form 43001 further provides that St. Paul will not "pay a claim after the limit of coverage has been used up paying judgments or settlements," and that, where other insurance also covers a claim, St. Paul "won't pay more than our limits of coverage."

20. St. Paul issued Umbrella Excess Liability Policy No. 0564XC2016 to "Big Brothers – Big Sisters of America," 117 South 17th Street, Philadelphia, Pennsylvania, for the policy period July 15, 1982 to July 15, 1983 (the "1982 Umbrella Policy"). A true and correct copy is attached as Exhibit B.

21. Item 4(a) of the Declarations of the 1982 Umbrella Policy states a limit of liability of $3,000,000 for "Each Occurrence and Annual Aggregate (where applicable)." The annual aggregate applies only to the products and completed operations hazards and is not at issue.

22. Section III, "Limit of Liability," of the 1982 Umbrella Policy provides in relevant part:

> Regardless of the number of (1) Insureds under this Policy, (2) persons or organizations who sustain injury or damage, or (3) claims made or suits brought on account of personal injury, property damage, or advertising offense, the Company's liability is limited as follows:
>
> With respect to personal injury, property damage or advertising offense, or any combination thereof, the Company's liability shall be only for the ultimate net loss in excess of the Insured's retained limit defined as the greater of:
>
> (a) an amount equal to the limits of liability indicated beside the underlying insurance listed in Schedule A hereof, plus the applicable limits of any other underlying insurance collectible by the Insured; or
>
> (b) the amount specified in Item 4(b) of the Declarations as the result of any one occurrence to which the underlying insurance does not apply;
>
> and then for an amount not exceeding the amount specified in Item 4(a) of the Declarations as the result of any one occurrence.

> ***
>
> For the purpose of determining the limit of the Company's liability, all damages arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

23. The 1982 Umbrella Policy provides "Occurrence" means "with respect to subsection (a) of the definition of personal injuries . . . an event, including injurious exposure to conditions, which results during this policy period in such personal injury … neither expected nor intended from the standpoint of the Insured." (Definitions, ¶ 9(1).)

24. The 1982 Umbrella Policy defines "Personal Injuries," in part, as "bodily injury, mental injury, mental anguish, shock, sickness, disability." (Definitions, ¶ 10(a).)

25. The 1982 Umbrella Policy provides that the "insurance afforded applies separately to each Insured against whom claim is made or suit is brought, except with respect to the limits of the Company's liability." (Definition, ¶ 10.)

26. The PLP Policies and the 1982 Umbrella Policy were negotiated, issued, and delivered to BBBSA at its then-headquarters in Philadelphia, Pennsylvania, through a Pennsylvania agent, and contain Pennsylvania-specific endorsements and notices.

27. Under Florida's choice-of-law rules, Pennsylvania law governs the interpretation of the PLP Policies and the 1982 Umbrella Policy.

**B. The D.R. Action and Its Settlement**

28. On April 29, 2022, D.R., proceeding under the pseudonym "John Doe," sued BBBSA (as "Doe 1") and its Bay Area local affiliate (as "Doe 2") in *John Doe v. Doe 1, et al.*, Superior Court of California, County of San Francisco, Case No. CGC-22-599432 (the "D.R. Action"). A copy of the D.R. Action complaint is attached as Exhibit C.

29. D.R. alleged that the local affiliate matched an adult volunteer mentor, Elias Ramos ("Ramos"), with D.R.'s older brother. D.R. alleged that Ramos' match with his older brother gave Ramos access to D.R. and to their mother, and that Ramos then became D.R.'s "unofficial" mentor through the program. (Ex. C ¶¶ 6, 25, 35–36.)

30. D.R. alleged that Ramos sexually abused him one to two times per week from approximately 1981 through 1983, at the family home in Hayward, California, at Ramos' home, and in Ramos' car. (Ex. C ¶¶ 25, 33, 38–40.)

31. D.R. expressly alleged that Ramos "also sexually abused and molested Plaintiff's older brother during on or about the same dates as Plaintiff's dates of abuse." (Ex. C ¶ 41.)

32. D.R. alleged that BBBSA and the local affiliate were negligent by, among other things, failing to adequately screen, train, supervise, and retain Ramos; failing to implement and enforce policies aimed at preventing, detecting, or deterring abuse, including policies against overnight visits; failing to educate parents and children about the potential for abuse; and failing to warn parents. (Ex. C ¶¶ 19, 42–45, 55–63.)

33. St. Paul defended BBBSA in the D.R. Action subject to a reservation of rights. On or about April 10, 2025, St. Paul paid to settle the D.R. Action on behalf of BBBSA under the PLP Policies and the 1982 Umbrella Policy and exhausted the limit of the 1982 Umbrella Policy.

**C. The Richard R. Action**

34. Richard R. is D.R.'s older brother. He sued BBBSA (as "Doe 3"), the same local affiliate (as "Doe 2"), and his former mentor (as "Doe 1") in the Richard R. Action. Upon information and belief, and as alleged in the D.R. Action, "Doe 1" in the Richard R. Action is Ramos. A copy of the complaint in the Richard R. Action is attached as Exhibit D.

35. Richard R. alleges that in or about 1980, his mother enrolled him in the local affiliate's mentoring program, and that the affiliate assigned Ramos as his mentor. (Ex. D ¶ 22.) He alleges he was approximately ten years old at that time. (*Id.* ¶ 24.)

36. Richard R. alleges that Ramos groomed him by befriending his mother, and that Ramos sexually abused him from on or about 1980 "[u]p until on or about 1983" at Ramos' home, the family home, and Ramos' vehicle. (Ex. D ¶¶ 25–27, 57–58.) He does not allege any abuse after 1983.

37. Richard R. alleges that BBBSA and the local affiliate were negligent by, among other things, failing to create, implement, and enforce policies for screening and background checks of prospective mentors; for supervising mentors and investigating potential abuse; for educating parents to detect misconduct and instructing them to report it; and for preventing risky behavior such as overnight stays. (Ex. D ¶¶ 35–54, 62.)

38. Both actions thus allege injury caused by the same mentor, Ramos; through the same local affiliate and the same program match; in the same household; during overlapping time periods that include the entire 1982 Umbrella Policy period; resulting from the same alleged acts and omissions of BBBSA in creating, implementing, and enforcing the same national policies governing the screening, supervision, and training of mentors and the education of parents.

39. The Richard R. Action is set for jury trial on October 19, 2026. St. Paul is defending BBBSA in the Richard R. Action under the PLP Policies, subject to a reservation of rights.

40. On September 18, 2026, counsel for Richard R. demanded an amount substantially in excess of $1,000,000 to settle the Richard R. Action (the "Settlement Demand").

**D. The Parties' Coverage Positions**

41. By letter dated October 18, 2024, St. Paul advised BBBSA that it would defend the Richard R. Action under the PLP Policies subject to a reservation of rights, and that the PLP Policies provide a $1,000,000 "each person limit," which is "the most the Policy pays for all claims resulting from the injury or death of any one person."

42. By letter dated January 28, 2026, St. Paul advised BBBSA that the each-occurrence limit of the 1982 Umbrella Policy was exhausted. St. Paul explained that the Richard R. Action involves the same alleged perpetrator, the same local affiliate, abuse during the same policy period, and the same alleged negligent conduct by BBBSA as the D.R. Action, and therefore arises from the same occurrence.

43. By letter dated February 6, 2026, St. Paul reiterated both positions and confirmed its willingness to contribute towards resolution of the Richard R. Action. In addition, St. Paul explained that both actions involved the same perpetrator, same local affiliate, abuse during the same policy period, the same alleged conduct by BBBSA, and BBBSA's alleged knowledge of policies and procedures to prevent child sexual abuse that it allegedly failed to implement or enforce

44. By letter dated September 28, 2026, BBBSA's coverage counsel rejected St. Paul's positions, contested the available limits of the PLP Policies and the 1982 Umbrella Policy, and demanded that St. Paul accept and fund the Settlement Demand.

45. An actual, present, and bona fide controversy exists between St. Paul and BBBSA as to the limits available under the PLP Policies and the 1982 Umbrella Policy for the Richard R. Action.

46. The dispute is concrete and immediate: a settlement demand that exceeds the limits St. Paul contends are available is pending, trial is weeks away, and BBBSA has asserted that St. Paul's limits position exposes St. Paul to extra-contractual liability.

47. A declaration will resolve the controversy and guide the parties' conduct in the Richard R. Action.

48. St. Paul does not waive, and expressly reserves, all other rights and defenses under the PLP Policies, the 1982 Umbrella Policy, and any other policy issued or allegedly issued to BBBSA, including those stated in its reservation-of-rights correspondence.

## COUNT I — DECLARATORY JUDGMENT

(Single Occurrence and Exhaustion of the 1982 Umbrella Policy)

49. St. Paul realleges paragraphs 1 through 48.

50. The 1982 Umbrella Policy limits St. Paul's liability to $3,000,000 "as the result of any one occurrence," "[r]egardless of the number of … persons or organizations who sustain injury or damage, or … claims made or suits brought."

51. The 1982 Umbrella Policy further provides that "all damages arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence."

52. The number of occurrences is determined by the cause of the injury for which the insured is alleged to be liable, not by the number of injured persons, claims, or suits.

53. BBBSA's alleged liability in both the D.R. Action and the Richard R. Action arises from a single cause: BBBSA's alleged failure to create, implement, and enforce adequate policies to screen, supervise, and train mentors and to educate parents, as applied to the local affiliate's assignment of Ramos as Richard R.'s mentor. D.R.'s own complaint alleges that his exposure to Ramos arose from, and depended on, that same match. (Ex. C ¶¶ 25, 35–36, 58.)

54. The injuries alleged in both actions arose out of continuous or repeated exposure of two brothers in the same household, during overlapping periods spanning the entire 1982 Umbrella Policy period, to substantially the same general conditions: the same mentor, the same program match, the same local affiliate, and the same alleged deficiencies in BBBSA's national policies.

55. That the two complaints emphasize different aspects of the same alleged policy failures does not create separate occurrences. Each complaint alleges the same categories of failures, and neither identifies any act or omission by BBBSA directed at one brother but not the other.

56. The claims asserted in the D.R. Action and the Richard R. Action therefore arise out of one occurrence under the 1982 Umbrella Policy.

57. St. Paul payment toward the settlement of the D.R. Action exhausted the 1982 Umbrella Policy's each-occurrence limit for the occurrence giving rise to both actions.

58. BBBSA disputes St. Paul's position, and St. Paul is in doubt as to its rights and obligations. St. Paul is entitled to a declaration resolving the dispute.

WHEREFORE, St. Paul requests that the Court enter judgment declaring that:

(a) the claims asserted in the D.R. Action and the Richard R. Action arise out of a single occurrence within the meaning of the 1982 Umbrella Policy;

(b) St. Paul's payment under the 1982 Umbrella Policy in settlement of the D.R. Action exhausted the 1982 Umbrella Policy's limit of liability for that occurrence;

(c) St. Paul has no obligation under the 1982 Umbrella Policy to pay any settlement or judgment in the Richard R. Action; and

(d) St. Paul is entitled to such further relief as the Court deems just and proper, including costs.

## COUNT II — DECLARATORY JUDGMENT

(The $1,000,000 Each Person Limit of the PLP Policies)

59. St. Paul realleges paragraphs 1 through 48.

60. The PLP Policies provide that the "each person limit" — $1,000,000 — "is the most we'll pay for all claims resulting from the injury or death of any one person."

61. The each person limit is unambiguous. It caps St. Paul's payment for "all claims" resulting from injury to one person. It contains no reference to, and is not limited by, any policy year or policy period.

62. When St. Paul intended a limit to apply per policy year, the PLP Policies said so expressly. The "total limit" is "the most we'll pay for all injuries that take place in a policy year," and "policy year" means "each consecutive annual period of the policy." The omission of any policy-year language from the each person limit confirms that the each person limit does not reset in each annual period.

63. The PLP Policies' structure confirms this reading. The 1982 PLP Policy was "extended in its present form" for November 24, 1983 to November 24, 1984 under the same policy number, and the policy form expressly contemplates multiple "consecutive annual period[s] of the policy." The 1982 PLP Policy also states that it "replaces" the former policy and "automatically ends all coverage" under it.

64. Richard R. is a single person. All of the claims asserted in the Richard R. Action result from the alleged injury of that one person.

65. Accordingly, the most St. Paul is obligated to pay under the PLP Policies, collectively, for all claims resulting from injury to Richard R. is $1,000,000.

66. BBBSA disputes St. Paul's position, and St. Paul is in doubt as to its rights and obligations. St. Paul is entitled to a declaration resolving the dispute.

WHEREFORE, St. Paul requests that the Court enter judgment declaring that:

(a) the each person limit of the PLP Policies is the most St. Paul is obligated to pay, under all of the PLP Policies combined, for all claims resulting from the injury of Richard R.;

(b) the each person limit does not apply separately in, and is not multiplied by, each policy year or policy period of the PLP Policies; and

(c) St. Paul is entitled to such further relief as the Court deems just and proper, including costs.

**PRAYER FOR RELIEF**

WHEREFORE, St. Paul Fire and Marine Insurance Company respectfully requests that the Court enter a final declaratory judgment in its favor as set forth in Counts I and II, award St. Paul its taxable costs, and grant such further relief under 28 U.S.C. § 2202 as the Court deems just and proper.

Dated: October 5, 2026

Respectfully submitted,

**BESVINICK NEVINS LLP**
1115 Anastasia Avenue
Coral Gables, Florida 33134
Tel: (786) 780-1101

By*/s/ Laura Besvinick*
**Laura Besvinick**
Florida Bar No. 391158
**Julie Nevins**
Florida Bar No. 182206
laura.besvinick@bn-llp.com
julie.nevins@bn-llp.com

*Counsel for Plaintiff, St. Paul Fire and Marine Insurance Company*