# EXHIBIT C

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| FOR COURT USE ONLY *(SOLO PARA USO DE LA CORTE)* |
|---|
| |

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
DOE 1, a District of Columbia Nonprofit Corporation and doing business in California;
DOE 2, a California Nonprofit Public Benefit Corporation; and DOE 3 through DOE 100, inclusive.

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

JOHN DOE

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California, County of San Francisco
400 McAllister Street, San Francisco, CA 94102

CASE NUMBER: *(Número del Caso):*
~~CGC-22-599432~~

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Mary E. Alexander; Mary Alexander & Associates, P.C.; 44 Montgomery St., Ste. 1303, San Francisco, CA 94104; (415) 433-4440.

DATE: *(Fecha)* **04/29/2022** Clerk, by *(Secretario)* **JEFFREY FLORES** , Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010).)*

[SEAL]

SUPERIOR COURT OF CALIFORNIA COUNTY OF SAN FRANCISCO

**NOTICE TO THE PERSON SERVED:** You are served

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify)*:
3. [x] on behalf of (specify): DOE 1, a District of Columbia Nonprofit Corporation and doing business in California

   under:
   - [X] CCP 416.10 (corporation)
   - [ ] CCP 416.20 (defunct corporation)
   - [ ] CCP 416.40 (association or partnership)
   - [ ] CCP 416.60 (minor)
   - [ ] CCP 416.70 (conservatee)
   - [ ] CCP 416.90 (authorized person)
   - [ ] other *(specify)*:
4. [ ] by personal delivery on *(date)*

MARY E. ALEXANDER, ESQ. (SBN: 104173)
BRENDAN D.S. WAY, ESQ. (SBN: 261705)
CATALINA S. MUÑOZ, ESQ. (SBN: 317856)
Mary Alexander & Associates, P.C.
44 Montgomery Street, Suite 1303
San Francisco, CA 94104
Telephone: (415) 433-4440
Facsimile: (415) 433-5440

Attorneys for Plaintiff JOHN DOE

ELECTRONICALLY
**FILED**
*Superior Court of California, County of San Francisco*
**04/29/2022**
**Clerk of the Court**
BY: JEFFREY FLORES
Deputy Clerk

**CGC-22-599432**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO (UNLIMITED JURISDICTION)

| | |
|---|---|
| JOHN DOE,<br><br>Plaintiff,<br><br>vs.<br><br>DOE 1, a District of Columbia Nonprofit Corporation and doing business in California; DOE 2, a California Nonprofit Public Benefit Corporation; and DOE 3 through DOE 100, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR PERSONAL INJURIES AND DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR DAMAGES**

Based upon information and belief available to Plaintiff JOHN DOE at the time of filing of this Complaint, Plaintiff alleges as follows against Defendants DOE 1, a District of Columbia Nonprofit Corporation doing business in California, DOE 2, a California Nonprofit Public Benefit Corporation, and DOE 3 through DOE 100, inclusive (collectively "Defendants):

///

## PARTIES

1. Plaintiff JOHN DOE ("Plaintiff") is a natural person who was a resident of the County of Santa Clara, at all relevant times mentioned herein. Plaintiff was born in 1971. Plaintiff was a minor throughout the period of childhood sexual assault, as defined by Code of Civil Procedure Section 340.1, as alleged herein. Plaintiff brings this Complaint pursuant to Code of Civil Procedure Section 340.1, as amended by Assembly Bill 218, for damages suffered as a result of childhood sexual assault. In addition, Plaintiff's claim for damages suffered as a result of childhood sexual assault is timely filed as it is being filed within three years of January 1, 2020. Plaintiff's full identity has been concealed from public court filings in order to prevent those not directly involved in this action from learning his identity and making his identity public. Such a public disclosure would further harm Plaintiff and his family.

2. Plaintiff is informed and believes and thereon alleges that at all times material hereto, Defendant DOE 1, a Nonprofit Corporation formed in the District of Columbia with its place of business located in Tampa, Florida, is registered to do and is doing business in the State of California, which includes but is not limited to local agencies, civil corporations, decision making entities, officials, and employees and agents authorized to conduct business in the State of California.

3. Plaintiff is informed and believes and thereon alleges that at all times material hereto, Defendant DOE 2, a California Nonprofit Public Benefit Corporation with its place of business located in the County of San Francisco, State of California, was and continues to be an entity organized and existing under the laws of the State of California, which includes but is not limited to civil corporations, decision making entities, officials, and employees authorized to conduct business in the State of California.

4. At all times material hereto, Defendant DOE 2 purposely conducted and conducts substantial business operations in and has served the nine California Bay Area counties, including the Counties of Alameda, Contra Costa, Marin, Napa, San Francisco, San Mateo, Santa Clara, Solano and Sonoma (collectively the "Bay Area").

5. Defendant DOE 1 is the national umbrella organization that supports its local

agencies and affiliates, including Defendant DOE 2. Defendant DOE 1 operates in communities throughout the State of California and throughout the United States. Defendants operate a volunteer-supported mentoring network and mentorship program that matches adult volunteers ("Mentor(s)") with children ("Mentee(s)"), ages five through young adulthood, for the purpose of developing positive one-on-one mentoring relationships (hereinafter "PROGRAM"). The PROGRAM is supported by Defendants' professional staff members, employees, and agents. Defendant DOE 2 is responsible for PROGRAM operations in their geographic area, including the recruitment, selection, and retention of volunteers to serve as Mentors in their PROGRAM.

6. Defendants are the entities operating and controlling the activities and behavior of their employees, supervisors, and agents, including Plaintiff's brother's adult Mentor, Elias "Eli" Ramos (hereinafter "RAMOS"), and their other volunteers and Defendants DOE 3 through DOE 100. Plaintiff is further informed and believes and thereon alleges that Defendants had sole authority and responsibility in selecting, hiring, training, and supervising their agents and employees, including their volunteer Mentors and PROGRAM administrators who assigned minor children Mentees to their matching adult Mentors. Defendant DOE 2 also had authority to control and supervise the PROGRAM of which RAMOS was part of during the relevant time period and including during 1981 through 1983. During this time, Defendant DOE 2 selected and assigned RAMOS to act as Plaintiff's brother's Mentor in their PROGRAM. At all times material hereto, RAMOS was under the direct control and supervision of Defendant DOE 2.

7. Plaintiff is informed and believes and thereon alleges that the true names and capacities, whether individual, corporate, associate or otherwise, of Defendants named herein as DOE 3 through DOE 100, inclusive, are currently unknown to Plaintiff, who therefore sues DOE Defendants by such fictitious names, and who will amend the Complaint to show their true names and capacities when such names have been ascertained. Plaintiff is informed and believes and thereon alleges that DOE Defendants are legally responsible in some manner for the events, happenings, and/or tortious and unlawful conduct that caused the injuries and damages alleged in this Complaint.

8. DOE 1, DOE 2 and/or DOE 3 through DOE 100 are collectively referred to as

"Defendants."

9. Plaintiff is informed and believes and thereon alleges that at all times material hereto, Defendants were the agents, representatives and/or employees of each and every other Defendant and were acting within the course and scope of said alternative personality, capacity, identity, agency, representation and/or employment and were within the scope of their authority, whether actual or apparent. At all times material hereto, Defendants were the trustees, partners, servants, joint venturers, shareholders, co-conspirators, contractors, and/or employees of each and every other Defendant, and the acts and omissions alleged herein were done by them, acting individually, through such capacity and within the scope of their authority and with the permission and consent of each and every other Defendant, and that such conduct was thereafter ratified by each Defendant, and that each Defendant is jointly and severally liable to Plaintiff.

## JURISDICTION AND VENUE

10. Jurisdiction is proper in the State of California as the state where Defendants DOE 1 and DOE 2 are registered to and are doing business and as the state where the incident occurred. Jurisdiction and venue are proper in San Francisco County Superior Court because it is the county where Defendant DOE 2's place of business is located

## FACTS

### History of Defendants' Program

11. Defendant DOE 1 markets itself as an organization that provides children facing adversity with professionally supported one-to-one mentoring relationship.

12. Defendants' primary work involves their one-on-one mentoring PROGRAM that matches adult volunteers or ("Mentor(s)") with children ("Mentee(s)").

13. Due to the nature of Defendants' PROGRAM, much of the Mentor and Mentee one-on-one contact is largely unsupervised.

14. The degree of risk of child sexual abuse is correlated to the amount of one-on-one unsupervised contact between adults and children in a youth-serving context.

15. Plaintiff is informed and believes and thereon alleges that Defendant DOE 1 knew of this risk to child safety and began to study this problem within their own organization and made

recommendations on screening volunteer applicants and how to supervise the mentorship relationships.

16. Plaintiff is informed and believes and thereon alleges that Defendant DOE 1 knew that a pedophilic agent, such as a Mentor or applicant, would try to encourage overnight visits with a Mentee, which could also put at risk other minor children associated with the Mentee.

17. Plaintiff is informed and believes and thereon alleges that Defendant DOE 1 had numerous allegations of sexual abuse within its organization.

18. The well-documented history of abuse that occurred in Defendant DOE 1's PROGRAM put Defendant DOE 1 on notice of the risk that children would be sexually abused by Mentors and/or other adults.

19. Defendant DOE 1, notwithstanding their knowledge of the risk of child sexual abuse within their organization and in their PROGRAM, did not take reasonable steps to make others aware of this risk, including to: (1) their staff, employees, and agents responsible for selecting and supervising their volunteer Mentors and the children they matched with them in their local agencies and affiliates such as Defendant DOE 2; and (2) children Mentees and their parents.

**DOE 1's Relationship with their Local Agencies and Affiliates**

20. Plaintiff is informed and believes and thereon alleges that at all times material hereto Defendant DOE 1 managed its relationship with its local agencies and affiliates through "affiliate agreements."

21. Defendant DOE 1 had an affiliate agreement(s) with its agencies and affiliates in the Bay Area. Under these agreements, local affiliates of Defendant DOE 1 must adhere to standards set by Defendant DOE 1, including standards theoretically designed to prevent child sexual abuse within their PROGRAM. To enforce compliance, Defendant DOE 1 performs reviews and evaluations of their local affiliates. Defendant DOE 1 also has the power to terminate an affiliate that does not comply with their standards.

22. Defendant DOE 1 developed and promulgated a child sexual abuse training program for all its local affiliates, including Defendant DOE 2. Defendant DOE 1, however, did not ensure use of or compliance with their prevention program by their affiliates, nor did

Defendant DOE 1's training program mention anything about the known history of sexual abuse within their organization.

23. At all times relevant, Defendant DOE 1's training program did not disclose to participants the known patterns of sexual abuse that they had acknowledged in their internal documents.

24. At all times relevant, neither Defendant DOE 1 nor Defendant DOE 2 (and/or its predecessors) imposed appropriate rules or restrictions on a Mentor inviting a Mentee to their home, overnight trips/visits, despite the risks associated with doing so.

**Facts and General Allegations**

25. This case involves multiple occurrences of sexual molestation and abuse, on Plaintiff while he was a member of Defendants' organization and a Mentee of their PROGRAM. The occurrences/incidents occurred at Plaintiff's childhood home in Hayward, California, at RAMOS' home, in RAMOS' automobile at various remote locations, and at Plaintiff's work. RAMOS was originally matched as Plaintiff's older brother's Mentor. Plaintiff was also a part of the PROGRAM and was assigned a different Mentor, who moved shortly after he was assigned to him. After Plaintiff's assigned Mentor moved away, Plaintiff remained in the PROGRAM and RAMOS filled the unofficial role of Mentor to Plaintiff, as well as continuing to be Plaintiff's older brother's Mentor through the PROGRAM.

26. At all times relevant, Plaintiff was a Mentee participant in Defendants' PROGRAM.

27. At all times relevant, Defendants, including Defendant DOE 2 and their employees and agents, were acting within the course and scope of their employment and/or agency with respect to the acts and omissions alleged herein.

28. Plaintiff is informed and believes that RAMOS was selected and/or hired as a volunteer of Defendant DOE 1 and/or Defendant DOE 2's organization and their PROGRAM. RAMOS was specifically selected to participate as a Mentor in the PROGRAM by Defendant DOE 2 and its employees and agents.

29. Plaintiff is informed and believes that, at all times relevant, RAMOS was an agent

of Defendants DOE 1 and DOE 2.

30. Plaintiff is informed and believes that, at all times relevant, Plaintiff was entrusted in the care, custody and control of Defendants, especially Defendant DOE 2, and their employees and agents, including RAMOS.

31. Plaintiff is informed and believes that RAMOS was a member of Defendants' organization and a Mentor in the PROGRAM, including from approximately the years 1981 through 1983. RAMOS was retained as Mentor to participate in the PROGRAM by Defendants. RAMOS remained under the direct supervision and control of Defendants. Defendants placed RAMOS in positions where he had access to and worked with children, including Plaintiff, as an integral part of his role as Mentor.

32. Defendants operated the PROGRAM and were in charge of training, screening, and recruiting qualified adult Mentors. Among their duties were to perform adequate training and screening of Mentors such that the safety of Mentees is not jeopardized.

33. RAMOS, in his role as a Mentor for Defendants' PROGRAM committed multiple acts of sexual molestation and abuse against Plaintiff during the time period of approximately 1981 through 1983, while Plaintiff was a Mentee of the PROGRAM.

34. RAMOS is a registered sex offender, listed on the *Megan's Law* website database. RAMOS has been convicted multiple times for committing various acts of sexual molestation and abuse against and related to minor children. According to the *Megan's Law* website database, RAMOS' multiple criminal convictions include violations of: (1) a 1991 conviction for violation of Cal. Penal Code 288A(B)(2)— Oral Copulation With a Minor Under 16 Years of Age and Offender is 21 Or More Years of Age; (2) a 2010 conviction for violation of Cal. Penal Code 311.11(a)—Possess or Control Obscene Matter Depicting Minor In Sexual Conduct; and (3) a 2013 conviction for violation of Cal. Penal Code 311.11(b)—Possess/Etc Obscene Matter of a Minor in Sexual Act.

35. Plaintiff was sexually abused and molested while a member of Defendants' PROGRAM from approximately 1981 through 1983. Defendants recruited and/or retained RAMOS to serve as an adult Mentor of the PROGRAM that would match him with a Mentee.

RAMOS was matched with Plaintiff's older brother's, who was also a part of the PROGRAM and became RAMOS's Mentee. In RAMOS' capacity of serving as Plaintiff's older brother's Mentee, the PROGRAM allowed RAMOS' to additionally develop a relationship with Plaintiff and Plaintiff's family, including Plaintiff's mother. After Plaintiff's own assigned Mentor moved away, RAMOS filled the unofficial role of Mentor to Plaintiff. RAMOS also became close with Plaintiff's family and gained the trust of Plaintiff's mother.

36. Serving as Mentor to Plaintiff's older brother's allowed RAMOS to have access to other minor children, including Plaintiff who was 9-12 years old during the time the acts of sexual abuse and assault occurred. RAMOS befriended Plaintiff's mother and pretended he wanted to serve as a positive influence in Plaintiff's life by way of also providing mentorship to Plaintiff and acting as his unofficial Mentor. RAMOS committed to meeting with Plaintiff for weekly visits for the purpose of developing a positive guidance and mentorship relationship with Plaintiff.

37. Immediately after Plaintiff's Mentor/Mentee relationship with RAMOS began on or about 1981, RAMOS began "grooming" Plaintiff with the intent of manipulating his emotions and taking advantage of his young age so that he could ultimately sexually abuse him. RAMOS was initially friendly, caring, and attentive in his role as the unofficial Mentor to Plaintiff (who at the time was only 9 years old). RAMOS became a trusted friend of Plaintiff's entire household. RAMOS took advantage of Plaintiff during a vulnerable time in his young life. Plaintiff came from an impoverished and dysfunctional household. Plaintiff did not know his father and his mother remarried his stepfather, who was ultimately imprisoned for 15 years when Plaintiff was in the sixth grade. Plaintiff's mother wanted to ensure her sons, including Plaintiff, had a good role model in their lives since their lives had been tumultuous and they had never received good mentoring from a male figure in their lives. As a result, Plaintiff and Plaintiff's older brother became Mentees in the PROGRAM and met RAMOS by which of the PROGRAM. RAMOS used Plaintiff's background to his advantage by acting as a father figure and providing Plaintiff with the attention he desperately needed in this respect. All of this was done in a calculated plan to have Plaintiff become emotionally attached to him, despite knowing he was only a young boy and could be easily manipulated by an adult male in a position of authority, such as a Mentor who was

specifically assigned to Plaintiff.

38. RAMOS began sexually molesting and abusing Plaintiff shortly after they first met on or about 1981. RAMOS would continue to abuse Plaintiff 1-2 times per week during weekly visits from the time Plaintiff was approximately 8 years old until 12 years old.

39. RAMOS began the abuse by telling Plaintiff he would teach him to drive so he could get him alone in his car for the purpose of sexually abusing him. RAMOS also abused Plaintiff at his family home in Hayward, California, at RAMOS' own home, and at Plaintiff's work. RAMOS's abuse began with touching Plaintiff's body over his clothes, and then escalated to touching Plaintiff's genitals. Eventually the abuse progressed to RAMOS anally penetrating Plaintiff on several occasions and forcing Plaintiff to perform oral sex on him. The abuse finally came to an end when Plaintiff's mother walked in on RAMOS sexually molesting Plaintiff at her home when he was about 12 years old. RAMOS committed these acts on Plaintiff at a time when he was just approximately 9-12 years old.

40. From approximately 1981 through 1983, RAMOS repeatedly engaged in weekly illegal sexual acts with Plaintiff, which included lewd and lascivious acts, oral copulation, and anal penetration. Under disguise of his mentorship role, RAMOS sexually molested and abused Plaintiff by initiating sleepovers. RAMOS had Plaintiff over for sleepovers at his home and also he himself slept over at Plaintiff's home, where the sexual molestation and abuse always occurred. The abuse continued for approximately three years, through the time Plaintiff was approximately ages 9 through 12 years of age. RAMOS completely controlled the relationship, he manipulated Plaintiff to continue with the inappropriate sexual relationship by providing him the emotional support Plaintiff desperately needed as a result of the missing father figure in his life.

41. RAMOS also sexually abused and molested Plaintiff's older brother during on or about the same dates as Plaintiff's dates of abuse, whom he was serving as Mentor too through the PROGRAM.

42. Defendants breached their duty to Plaintiff by failing to adequately implement or enforce policies, procedures, rules and regulations that were aimed at preventing, detecting, or deterring the sexual harassment or abuse of children entrusted to them through their PROGRAM,

which would have enabled proper monitoring and supervision, and could have prevented or at least abated the sexual abuse of Plaintiff.

43. Defendants knew or should have known of the foreseeable risk of sexual molestation and abuse of a minor perpetrated by their employees and agents during overnight visits between a Mentor and a Mentee and failed to implement and/or enforce appropriate policies against overnight visits and train their employees and agents in this regard, including their Mentors such as RAMOS.

44. Defendants also failed to take reasonable steps to prevent the childhood sexual abuse of Plaintiff, which could have been avoided or at least abated, had Defendants properly trained, investigated, monitored, and supervised RAMOS.

45. But for Defendants inadequately screening, training, supervising, and retaining RAMOS, Plaintiff would not have been sexually molested and abused by RAMOS.

46. These negligent, careless, and reckless acts and omissions of Defendants were a substantial factor and a legal cause of the damages and injuries sustained by Plaintiff. As a direct and proximate result of said acts, omissions and negligence of Defendants, and each of them, Plaintiff sustained personal injuries and damages.

47. As a direct and proximate result of his personal injuries, Plaintiff has been generally damaged in a sum in excess of the jurisdictional limits of the Superior Court, Limited Jurisdiction.

48. As a direct and proximate result of said acts, omissions and negligence of Defendants, and each of them, Plaintiff has incurred economic and noneconomic damages and continues to incur these damages, the full nature and extent of which are not yet known to Plaintiff, and leave is requested to amend this Complaint to conform to proof at the time of trial.

49. As a direct and proximate result of the above-described conduct, acts and omissions of Defendants, including their ratification of RAMOS' conduct, was oppressive, malicious and despicable in that it was intentional and done in conscious disregard for the rights and safety of Plaintiff, and was carried out with a conscious disregard of Plaintiff's right to be free from such tortious behavior, such as to constitute oppression, fraud or malice pursuant to California Civil

Code section 3294, entitling Plaintiff to punitive damages against Defendants in an amount appropriate to punish and set an example of them.

50. Plaintiff is entitled to pre-judgment interest on said damages attributable to an ascertainable economic value pursuant to Civil Code section 3288. Plaintiff has lost pre-judgment interest pursuant to Civil Code section 3291, the exact amount of which Plaintiff prays leave to insert herein when finally ascertained and to conform to proof at trial.

**FIRST CAUSE OF ACTION**

**Negligence Against Defendant DOE 1, Defendant DOE 2 and DOES 3 through 100**

51. Plaintiff realleges and incorporates as if fully stated herein each and every allegation contained in the previous paragraphs of this Complaint.

52. At all relevant times, Defendants and Plaintiff were in the special relationship of Mentor/Mentee that gave Plaintiff a right of protection from Defendants.

53. At all relevant times, Defendants were in a special relationship with RAMOS' as an agent of Defendants' PROGRAM and matching him as a Mentor to vulnerable minors which gave Defendants a right to control RAMOS' conduct.

54. At all material times, Defendants owed a duty to Plaintiff to use reasonable care to ensure his safety, care, health, and well-being, including protecting his from sexual molestation, abuse, assault and harassment. This duty encompassed using reasonable care in the supervision and protection of Plaintiff as a Mentee of the PROGRAM. This duty encompassed the prevention of foreseeable harm from occurring to Plaintiff while under the Defendants' supervision and control. Defendants acted *in loco parentis* while entrusted with the custody and control of Plaintiff.

55. Such duty extends to care to be taken to foresee and avoid any situation that could be potentially dangerous or harmful to Mentees of the PROGRAM. Defendants had a duty to educate parents and their children about the potential for sexual molestation, harassment, abuse, assault and battery. Defendants breached their duties to Plaintiff. Defendants and RAMOS abused their positions of trust and authority, causing injury to Plaintiff. Defendants negligently failed to ensure the safety of a minor, Plaintiff, who was entrusted to Defendants' custody, care and control.

56. Defendants, and each of them, had the responsibility and duty to adequately and properly investigate, hire, train, and supervise their agents, and employees and to protect their underage members participating in the PROGRAM from harm caused by unfit and dangerous individuals hired and/or retained as Mentors of the PROGRAM.

57. Defendants lacked prudent safeguards. The Defendants' retaining, hiring and supervisory policies, procedures, rules and regulations did not adequately provide for safety, security and protection of its underage members. Defendants had a duty to enforce policies, procedures, rules and regulations that were in place for protection of its minor members.

58. Before and during the sexual molestation and abuse of Plaintiff by RAMOS, Defendants failed to exercise any reasonable care in supervising RAMOS or Plaintiff in their unofficial Mentor/Mentee relationship, which came to be as a result of RAMOS' Mentor/Mentee relationship with Plaintiff's older brother through the PROGRAM. RAMOS was alone with Plaintiff at RAMOS' private residence by virtue of "sleepovers" allowed, encouraged, and/or sponsored via the PROGRAM. RAMOS engaged in unlawful sexual molestation and abuse of Plaintiff at his private residence during that time. Defendants did not take appropriate action to determine if RAMOS was abusing Plaintiff at his private residences while there by virtue of "sleepovers" which were allowed, encouraged, and/or sponsored by Defendants' PROGRAM.

59. Defendants knew or should have known that RAMOS was unfit to be a Mentor for the PROGRAM. Defendants were negligent in retaining and continuing to allow RAMOS to be part of the PROGRAM without any significant investigation or knowledge that he was fit to act in a position of trust and safety with respect to underage members of PROGRAM. The failure to adequately retain, train, investigate, and/or supervise RAMOS as a Mentor of the PROGRAM constituted a breach of the Defendants' duties. Defendants knew and had reason to know that RAMOS could not be trusted to behave appropriately around underage Mentees and avoid harassment or sexual wrongdoing against Mentees. Defendants' employees, agents or representatives knew or should have known of RAMOS continuing sexual molestation, harassment, abuse, assault and battery towards minor children, including Plaintiff, and that he posed a reasonably foreseeable risk of harm to minor children. Defendants knew and should have

known of RAMOS' continuing pedophiliac tendencies and propensities to molest, harass, abuse, assault and batter minor children.

60. At all relevant times, Defendants knew or in the exercise of reasonable care should have known that a failure to supervise RAMOS with its underage Mentees would lead to potentially dangerous and harmful conduct, including the sexual molestation and abuse of Plaintiff.

61. Defendants failed to take reasonable steps to provide for Plaintiff's safety and control by RAMOS, to warn staff and employees of the consequences of failure to supervise its underage members with RAMOS, to warn parents, and/or train its staff to detect and prevent sexual abuse.

62. Defendants and their employees, agents and representatives owed a duty to protect underage members from harm. Defendants are liable for their failure to adequately retain, supervise, and train RAMOS, and other employees, agents and representatives who knew and should have known of his misconduct. Defendants negligently retained, failed to report, failed to investigate, failed to discipline, failed to supervise and/or negligently or affirmatively recommended RAMOS to positions of trust and positions whereby he would act as an authority figure to Mentees like Plaintiff and harm them. Defendants negligently failed to prevent pre-sexual grooming and sexual molestation and abuse of children, including Plaintiff. Defendants failed to ensure that minor children and employees, agents and representatives were properly supervised and properly trained in policies that would have prevented the acts by RAMOS. Defendants negligently supervised, trained, and retained RAMOS, and other employees, agents, representatives and independent contractors, by allowing RAMOS to sexually molest and abuse Plaintiff and to maintain an environment via the PROGRAM where RAMOS could and did sexually molest and abuse Plaintiff.

63. Had Defendants properly investigated, supervised, trained, and monitored RAMOS' conduct and actions as a Mentor of the PROGRAM, they would have discovered that he was unfit to be employed in that position. By failing to adequately supervise, monitor, or investigate, Defendants allowed RAMOS to continue, unhindered, with his predatory conduct

directed towards underage children, including Plaintiff. Had Defendants performed their duties and responsibilities to monitor, supervise and/or investigate its Mentor, Plaintiff would not have been subject to the sexual abuse and other harmful conduct inflicted upon him. Defendants knew or should have known that their failure to properly supervise, control, oversee, and monitor Plaintiff, particularly in his interactions with RAMOS, would result in serious harm and injury to Plaintiff.

64. By engaging in the aforementioned negligent conduct and by failing to comply with state laws that apply to sexual molestation and abuse, Defendants, and each of them, violated various statutes, including but not limited to: Cal. Civ. Code § 51.9. Plaintiff was in the class of persons specifically designed to be protected from the aforementioned code sections, and his injuries and damages resulted from occurrences of the nature which the statutes were designed to prevent. These statutes were intended to afford minor children, like Plaintiff, protection from sexual molestation and abuse. Defendants negligently exposed Plaintiff to the foreseeable danger of sexual molestation and abuse by RAMOS.

65. During various times through approximately 1981-1983, while Plaintiff was an underage member of the PROGRAM and under the direct custody, care, control, and supervision of Defendants, said Defendants also negligently, carelessly, and recklessly supervised and failed to supervise Plaintiff. These negligent, careless, and reckless acts and omissions of Defendants were a substantial factor and a legal cause of the damages and injuries sustained by Plaintiff.

66. As a result of the negligence of Defendants, Plaintiff was sexually molested, assaulted and abused and otherwise harmed by RAMOS.

67. As a direct and proximate result of said acts, omissions, and negligence of Defendants, and each of them, Plaintiff has suffered and continues to suffer personal injuries and damages.

68. As a direct and proximate result of said acts, omissions, and negligence of Defendants, and each of them, Plaintiff has incurred economic and noneconomic damages and continues to incur these damages, the full nature and extent of which are not yet known to Plaintiff, and leave is requested to amend this Complaint to conform to proof at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For damages for past and future medical, psychotherapy, and related expenses according to proof at the time of trial;

2. For general damages for physical and mental pain and suffering and emotional distress in a sum to be proven at the time of trial;

3. For damages for past loss wages and past earning capacity and/or future lost wages and loss of earning capacity according to proof at the time of trial;

4. For treble damages, as authorized by section 340.1 of the Code of Civil Procedure;

5. For punitive damages as authorized by section 340.1 of the Code of Civil Procedure;

6. For prejudgment interest pursuant to statute;

7. For costs of suit herein; and

8. For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury.

DATED: April 29, 2022

MARY ALEXANDER & ASSOCIATES, P.C.

By: Catalina Munoz

Mary E. Alexander, Esq.
Brendan D.S. Way, Esq.
Catalina S. Munoz, Esq.
*Attorneys for Plaintiff*

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Mary E. Alexander (SBN: 104173); Catalina S. Munoz (SBN: 317856)<br>MARY ALEXANDER & ASSOCIATES, P.C.<br>44 Montgomery Street, Suite 1303<br>San Francisco, CA 94104<br>TELEPHONE NO.: (415) 433-4440 FAX NO.: (415) 433-5440<br>ATTORNEY FOR (Name): Plaintiff John Doe | ELECTRONICALLY<br>**FILED**<br>*Superior Court of California, County of San Francisco*<br>**04/29/2022**<br>**Clerk of the Court**<br>BY: JEFFREY FLORES<br>Deputy Clerk |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco<br>STREET ADDRESS: 400 McAllister Street<br>MAILING ADDRESS: 400 McAllister Street<br>CITY AND ZIP CODE: San Francisco, 94104<br>BRANCH NAME: Civic Center Courthouse | |
| CASE NAME:<br>John Doe v. DOE 1, et. al. | |

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: **CGC-22-599432** |
|---|---|---|
| ☑ **Unlimited** (Amount demanded exceeds $25,000) ☐ **Limited** (Amount demanded is $25,000 or less) | ☐ **Counter** ☐ **Joinder**<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☑ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. ☑ monetary b. ☐ nonmonetary; declaratory or injunctive relief c. ☑ punitive
4. Number of causes of action *(specify)*: One (1)
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 4/29/2022
Catalina S. Munoz, Esq. ▶ Catalina Munoz
(TYPE OR PRINT NAME) (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

# Superior Court of California, County of San Francisco
# Alternative Dispute Resolution
# Information Package

The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action together with the cross-complaint. (CRC 3.221(c).)

**WHAT IS ADR?**

Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial. There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences. In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to trial.

**WHY CHOOSE ADR?**

It is the policy of the Superior Court that every long cause, non-criminal, non-juvenile case should participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial. (Local Rule 4.)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.** The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.** For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

**<u>Electing to participate in an ADR process does not stop the time period to respond to a complaint or cross-complaint</u>**

**WHAT ARE THE ADR OPTIONS?**

The San Francisco Superior Court offers different types of ADR processes for general civil matters. The programs are described below:

**1) MANDATORY SETTLEMENT CONFERENCES**

Settlement conferences are appropriate in any case where settlement is an option. The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute. Mandatory settlement conferences are ordered by the court and are often held near the date a case is set for trial, although they may be held earlier if appropriate. A party may elect to apply to the Presiding Judge for a specially set mandatory settlement conference by filing an ex parte application. See Local Rule 5.0 for further instructions. Upon approval by the Presiding Judge, the court will schedule the conference and assign a settlement conference officer.

**2) MEDIATION**

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO (BASF),** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending. Experienced professional mediators work with parties to arrive at a mutually agreeable solution. The mediators provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. BASF staff handles conflict checks and full case management. The success rate for the program is 67% and the satisfaction rate is 99%. BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the fee are available to those who qualify. For more information, call 415-982-1600 or email adr@sfbar.org.

**(B) JUDICIAL MEDIATION PROGRAM** provides mediation with a San Francisco Superior Court judge for civil cases, which include but are not limited to, personal injury, construction defect, employment, professional malpractice, insurance coverage, toxic torts and industrial accidents. Parties may utilize this program at any time throughout the litigation process. Parties interested in judicial mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court will coordinate assignment of cases for the program. There is no charge. Information about the Judicial Mediation Program may be found by visiting the ADR page on the court's website: www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

**(C) PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, parties may select any private mediator of their choice. The selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

**(D) COMMUNITY BOARDS MEDIATION SERVICES:** Mediation services are offered by Community Boards (CB), a nonprofit resolution center, under the Dispute Resolution Programs Act. CB utilizes a three-person panel mediation process in which mediators work as a team to assist the parties in reaching a shared solution. To the extent possible, mediators are selected to reflect the demographics of the disputants. CB has a success rate of 85% for parties reaching a resolution and a consumer satisfaction rate of 99%. The fee is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available. For more information, call 415-920-3820 or visit communityboards.org.

### 3) ARBITRATION

An arbitrator is a neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

#### (A) JUDICIAL ARBITRATION

When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Pursuant to CCP 1141.11, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed. Local Rule 4.1 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after being assigned to judicial arbitration. There is no cost to the parties for judicial arbitration.

#### (B) PRIVATE ARBITRATION

Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

### HOW DO I PARTICIPATE IN ADR?

Litigants may elect to participate in ADR at any point in a case. General civil cases may voluntarily enter into the court's or court-affiliated ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet and available on the court's website); or
- Indicating your ADR preferences on the Case Management Statement (available on the court's website); or
- Contacting the court's ADR Department (see below), the Bar Association of San Francisco's ADR Services, or Community Boards.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103-A, San Francisco, CA 94102
415-551-3869
Or, visit the court's ADR page at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE AND FILE THE ATTACHED STIPULATION TO ADR AND SUBMIT IT TO THE COURT. <u>YOU MUST ALSO CONTACT BASF OR COMMUNITY BOARDS TO ENROLL IN THEIR LISTED PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF STIPULATIONS TO BASF OR COMMUNITY BOARDS.</u>

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and address)<br><br>TELEPHONE NO.:<br>ATTORNEY FOR (Name): | FOR COURT USE ONLY |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO<br>400 McAllister Street<br>San Francisco, CA 94102-4514 | |
| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |
| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: ____________________<br>DEPARTMENT 610 |

1) The parties hereby stipulate that this action shall be submitted to the following ADR process:

☐ **Mediation Services of the Bar Association of San Francisco (BASF)** - Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐ **Mediation Services of Community Boards (CB)** – Service in conjunction with DRPA, CB provides case development and one three-hour mediation session. Additional sessions may be scheduled. The cost is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available to those who qualify. communityboards.org

☐ **Private Mediation** - Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐ **Judicial Arbitration** - Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

☐ **Judicial Mediation** - The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

Judge Requested (see list of Judges currently participating in the program): ______________________

Date range requested for Judicial Mediation (from the filing of stipulation to Judicial Mediation):

☐ 30-90 days ☐ 90-120 days ☐ Other (please specify) ______________

☐ Other ADR process (describe) ______________________________________________

2) The parties agree that the ADR Process shall be completed by (date): ____________________
3) Plaintiff(s) and Defendant(s) further agree as follows:

______________________________________________________________________

| | |
|---|---|
| Name of Party Stipulating | Name of Party Stipulating |
| Name of Party or Attorney Executing Stipulation | Name of Party or Attorney Executing Stipulation |
| Signature of Party or Attorney | Signature of Party or Attorney |
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | ☐ Plaintiff ☐ Defendant ☐ Cross-defendant |
| Dated: ____________________ | Dated: ____________________ |

☐ *Additional signature(s) attached*

CASE NUMBER: CGC-22-599432 JOHN DOE VS. DOE 1 ET AL

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

**DATE:** **SEP 28, 2022**

**TIME:** **10:30 am**

**PLACE:** **Department 610**
**400 McAllister Street**
**San Francisco, CA 94102-3680**

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference. However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed and served twenty-five days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state. **This case is eligible for electronic filing and service per Local Rule 2.11. For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

## ALTERNATIVE DISPUTE RESOLUTION REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE SHOULD PARTICIPATE IN MEDIATION, ARBITRATION, NEUTRAL EVALUATION, AN EARLY SETTLEMENT CONFERENCE, OR OTHER APPROPRIATE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**

(SEE LOCAL RULE 4)

Plaintiff **must** serve a copy of the Alternative Dispute Resolution (ADR) Information Package on each defendant along with the complaint. (CRC 3.221.) The ADR package may be accessed at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution or you may request a paper copy from the filing clerk. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the ADR Information Package prior to filing the Case Management Statement.

**Superior Court Alternative Dispute Resolution Administrator**
**400 McAllister Street, Room 103-A**
**San Francisco, CA 94102**
**(415) 551-3869**

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**

MARY E. ALEXANDER, ESQ. (SBN: 104173)
BRENDAN D.S. WAY, ESQ. (SBN: 261705)
CATALINA S. MUÑOZ, ESQ. (SBN: 317856)
Mary Alexander & Associates, P.C.
44 Montgomery Street, Suite 1303
San Francisco, CA 94104
Telephone: (415) 433-4440
Facsimile: (415) 433-5440

Attorneys for Plaintiff JOHN DOE

**FILED**
San Francisco County Superior Court
MAY 25 2022
CLERK OF THE COURT
[signature]
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO (UNLIMITED JURISDICTION)

| | |
|---|---|
| JOHN DOE,<br><br>Plaintiff,<br><br>vs.<br><br>DOE 1, a District of Columbia Nonprofit Corporation and doing business in California; DOE 2, a California Nonprofit Public Benefit Corporation; and DOE 3 through DOE 100, inclusive,<br><br>Defendants. | Case No.: CGC-22-599432<br><br>**~~[PROPOSED]~~ ORDER GRANTING PLAINTIFF JOHN DOE'S *EX PARTE* APPLICATION FOR *IN CAMERA* FINDING OF REASONABLE AND MERITORIOUS CAUSE FOR FILING OF ACTION AND ORDER TO SEAL AND KEEP CONFIDENTIAL ALL CERTIFICATES OF MERIT**<br><br>[Concurrently Filed with *Ex Parte* Application and Memorandum of Points and Authorities for *In Camera* Finding of Reasonable and Meritorious Cause for Filing and Order to Seal and Keep Confidential]<br><br>Date: May 25, 2022<br>Time: 11 a.m.<br>Dept.: 302<br><br>Complaint Filed: April 29, 2022<br>Trial Date: None |

## [PROPOSED] ORDER GRANTING *EX PARTE* APPLICATION:

The COURT, having read and considered Plaintiff's *Ex Parte* Application for *In Camera* Finding of Reasonable and Meritorious Cause for Filing of Action and Order to Seal and Keep Confidential All Certificates of Merit, the Memorandum of Points and Authorities filed in support thereof, and the Certificates of Merit confidentially lodged by Plaintiff for *in camera* review:

**IT IS HEREBY ORDERED THAT:**

1. The Court has found by, *in camera* review, that there is a reasonable and meritorious cause for the filing of the action against Defendant DOE 1.
2. The Court has found by, *in camera* review, that there is a reasonable and meritorious cause for the filing of the action against Defendant DOE 2.
3. CERTIFICATE OF MERIT FOR PLAINTIFF JOHN DOE VERSUS DEFENDANTS DOE 1 and DOE 2 PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 340.1(g)(2), previously lodged with the Court for *in camera* review only, shall be sealed from the public record and kept confidential absent further order of this Court.
4. CERTIFICATE OF MERIT FOR PLAINTIFF JOHN DOE VERSUS DEFENDANT DOE 1, PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 340.1(g)(1), previously lodged with the Court for *in camera review* only, shall be sealed from the public record and kept confidential absent further order of this Court.
5. CERTIFICATE OF MERIT FOR PLAINTIFF JOHN DOE VERSUS DEFENDANT DOE 2, PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 340.1(g)(1), previously lodged with the Court for *in camera review* only, shall be sealed from the public record and kept confidential absent further order of this Court.

//

**IT IS SO ORDERED.**

DATE: 5/25/22

Ulmer

Honorable Judge of the Superior Court
City and County of San Francisco

RICHARD B. ULMER